IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES CALVIN MOORE #209229, :

 Plaintiff,       :

vs.          :   CIVIL ACTION 08-0533-KD-M

WARDEN JERRY FERRELL,    :

 Defendants.      :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding <u>pro se</u> and <u>in forma pauperis</u> filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant's Motion for Summary Judgment (Docs. 11, 12), and Plaintiff's opposition thereto.  (Docs. 10, 14, 21).  After consideration of the pleadings and the evidence presented by the parties, and for the reasons set forth below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action against this Defendant be dismissed with prejudice.

## I.  SUMMARY OF ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues

addressed in this Report and Recommendation.  At all times
relevant to this litigation, Plaintiff has been an inmate
incarcerated at Fountain Correctional Facility ("Fountain")
in Atmore, Alabama.  (Doc. 1 at 4).  The record shows that,
on or about July 4, 2008, Plaintiff suffered a seizure and
was taken to the prison health care unit.  (Doc. 22, att. 1
at 9, 25).  Dr. Delano Benjamin ordered medication for
Plaintiff and instructed the nursing staff to keep him on
the ward and monitor his condition.  (Id. at 9).  Plaintiff
was observed for approximately twelve hours and then
released after having no further seizure activity or
complaints.  (Doc. 22, att. 1 at 25).  Thereafter, Dr. Oscar
B. Lopez, Dr. Benjamin, and Dr. Robert Barnes, the prison
physicians, monitored Plaintiff's condition and examined him
approximately every three months in the chronic care clinic.
(Doc. 12, att. 1 at 2-7; Doc. 22, att. 1 at 5-9).  Plaintiff
was given Dilantin to control his seizures.  However, he
experienced side effects from the medication, and the dosage
had to be adjusted periodically.  (Doc. 22, att. 1 at 5-9,
14, 28-40).

On September 11, 2008, Plaintiff was taken to a private
hospital in Atmore, Alabama, for an MRI and an x-ray of his
head.  (Doc. 10 at 7).  Dr. Lopez followed up with Plaintiff

2

in the chronic care clinic on September 24, 2008.  (Doc. 12, att. 1 at 4).

On December 20, 2008, Plaintiff was treated in the health care unit by the nursing staff for two separate seizures that occurred on that date.  (Doc. 12, att. 1 at 2, 6-7). Plaintiff was monitored for several hours by the nursing staff, who consulted with Dr. Barnes by telephone, and then was released after having no complaints or further seizure activity.  (Doc. 22, att. 1 at 19-20).

On December 30, 2008, Plaintiff was treated in the health care unit for a headache.  (Doc. 12, att. 1 at 5-7). Dr. Lopez followed up with Plaintiff the following day, December 31, 2008, in the chronic care clinic.  (Doc. 12, att. 1 at 3-4; Doc. 22, att. 1 at 19).

Plaintiff was next seen by a doctor on April 10, 2009, after complaining about his medication making him "dizzy." (Doc. 22, att. 1 at 14).  Dr. Lopez ordered lab work and, to date, has continued to monitor Plaintiff's Dilantin level and dosage.  (Id. at 5, 28-29).

## II.  PROCEDURAL ASPECTS OF THE CASE

On September 18, 2008, Plaintiff filed the present § 1983 action against Defendant Warden Jerry Ferrell alleging delay of proper medical treatment for his seizure disorder.

(Doc. 1 at 4).  It appears from Plaintiff's Complaint and his response in opposition to Defendant's Motion for Summary Judgment that he is claiming that he was denied access to real doctors and, instead, was relegated to seeing a nurse practitioner; he had to wait two months for an MRI after his first seizure; and the medical staff could not properly regulate his Dilantin medication.  (Doc. 1; Doc. 14 at 3-4). Plaintiff claims that Defendant, Warden Ferrell, is responsible for the inadequate medical care that he received, and he seeks injunctive relief and compensatory damages.  (Id.).

In his Answer and Special Report filed on February 9, 2009, Defendant Ferrell denies Plaintiff's allegations and asserts the defenses of absolute and qualified immunity.[1]

---

[1]Plaintiff does not specify whether he is suing Defendant Ferrell in his official or individual capacity or both.  Thus, the Court will consider both.  As a state official, Defendant Ferrell is absolutely immune from suit for damages in his official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  Having found herein that Plaintiff's allegations related to his medical treatment do

(Docs. 11, 12).  On April 6, 2009, the Court ordered that Defendant's Answer and Special Report be treated as a Motion for Summary Judgment.  (Doc. 13).  Defendant's motion and Plaintiff's responses in opposition thereto are now before the Court. (Docs. 10, 11, 12, 14, 21).

<u>III.  SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule

_____

not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse
> party's pleading, but the adverse party's
> response, by affidavits or as otherwise
> provided in this rule, must set forth
> specific facts showing that there is a
> genuine issue for trial.  If the adverse
> party does not so respond, summary
> judgment, if appropriate, shall be
> entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV.  DISCUSSION

6

As discussed above, Plaintiff seeks redress in this
action pursuant to 42 U.S.C. § 1983 for an alleged
constitutional deprivation arising out of the medical
treatment that he received while incarcerated at Fountain
Correctional Facility.  (Doc. 1).  Specifically, Plaintiff
claims that Defendant, Warden Ferrell, violated his Eighth
Amendment rights by failing to ensure that the prison
medical staff provided timely, adequate medical treatment
for his seizure disorder.  (Doc. 1 at 4; Doc. 14 at 3-4).

Section 1983 provides in pertinent part that:

> Every person who, under color of any
> statute, ordinance, regulation, custom,
> or usage, of any State or Territory or
> the District of Columbia, subjects, or
> causes to be subjected, any citizen of
> the United States or other person within
> the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution
> and laws, shall be liable to the party
> injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).

In <u>Sims v. Mashburn</u>, 25 F.3d 980 (11th Cir. 1994), the
Eleventh Circuit delineated the objective and subjective
portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have
> two components, an objective component,
> which inquires whether the alleged

7

> wrongdoing was objectively harmful enough
> to establish a constitutional violation,
> and a subjective component, which
> inquires whether the officials acted with
> a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need.  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994), overruled in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill, 40 F.3d at 1187 (citations omitted).  "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'"  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

Next, in order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious medical need.  Hill, 40 F.3d at 1186.

8

> In *Estelle*, the Supreme Court established
> that "deliberate indifference" entails
> more than mere negligence. *Estelle*, 429
> U.S. at 106, 97 S. Ct. 285; *Farmer*, 511
> U.S. at 835, 114 S. Ct. 1970. The
> Supreme Court clarified the "deliberate
> indifference" standard in *Farmer* by
> holding that a prison official cannot be
> found deliberately indifferent under the
> Eighth Amendment "unless the official
> *knows of* and *disregards an excessive risk
> to inmate health or safety*; the official
> must both be aware of facts from which
> the inference could be drawn that a
> substantial risk of serious harm exists,
> and he must also draw the inference."
> *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970
> (emphasis added). In interpreting *Farmer*
> and *Estelle*, this Court explained in
> *McElligott* that "deliberate indifference
> has three components: (1) subjective
> knowledge of a risk of serious harm; (2)
> disregard of that risk; (3) by conduct
> that is more than mere negligence."
> *McElligott*, 182 F.3d at 1255; *Taylor*, 221
> F.3d at 1258 (stating that defendant must
> have subjective awareness of an
> "objectively serious need" and that his
> response must constitute "an objectively
> insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the
Eighth Amendment . . . when it is tantamount to unnecessary
and wanton infliction of pain." *Hill*, 40 F.3d at 1187
(internal citations and quotation marks omitted). "Cases
stating a constitutional claim for immediate or emergency
medical attention have concerned medical needs that are

9

obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Id.; accord Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997) (applying the Fourteenth Amendment).

"The tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Hill, 40 F.3d at 1188 (emphasis in original) (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id.

Hill, 40 F.3d at 1188 (emphasis in original).

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. (emphasis added) (footnotes omitted).

10

A.   <u>No Respondeat Superior Liability</u>.

Plaintiff's claim against Defendant Ferrell in this action appears to be based on the theory of *respondeat superior*, that is, that Warden Ferrell, as a supervisor, is responsible for the medical staff's failure to provide timely and adequate medical care to Plaintiff related to his seizure disorder.  However, in order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights.  <u>See</u> <u>Frankum v. Chapman</u>, 2009 WL 1118875, *3 (S.D. Ala. 2009); <u>Trotter v. Correctional Medical Services, Inc.</u>, 2008 WL 2225696, *9 (S.D. Ala. 2008).  Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*.  <u>See</u> <u>Edwards v. Alabama Dep't of Corrs.</u>, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support their § 1983 claim. . . .").

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and

11

the alleged constitutional deprivation." <u>Cottone v. Jenne</u>,
326 F.3d 1352, 1360 (11th Cir. 2003).  "The necessary causal
connection can be established 'when a history of widespread
abuse puts the responsible supervisor on notice of the need
to correct the alleged deprivation, and he fails to do so.'"
<u>Id.</u> (citations omitted).  "Alternatively, the causal
connection may be established when a supervisor's 'custom or
policy . . . result[s] in deliberate indifference to
constitutional rights' or when facts support 'an inference
that the supervisor directed the subordinates to act
unlawfully or knew that the subordinates would act
unlawfully and failed to stop them from doing so.'" <u>Id.</u>
(citations and internal quotation marks omitted).

In such instances, Plaintiff must show that the policy
or custom was "the 'moving force [behind] the constitutional
violation.'" <u>Pinkney v. Davis</u>, 952 F. Supp. 1561, 1569
(M.D. Ala. 1997) (citations omitted).  "[I]t is clear that
not only must there be some degree of 'fault' on the part of
[defendant] in establishing the policy or tolerating the
custom, but there must be a causal link between the custom
or policy and the constitutional deprivation."  <u>Id.</u>
(citations omitted).

Assuming, *arguendo*, that the medical staff at Fountain

12

failed to provide timely or adequate medical care to
Plaintiff related to his seizure disorder, Plaintiff has
failed to establish, or even allege, any custom or policy of
Warden Ferrell which caused this alleged constitutional
violation.  Given the absence of evidence of a causal
connection between Defendant Ferrell's customs or policies
and the alleged constitutional deprivation by the medical
staff, Plaintiff's claim against Defendant Ferrell based on
his role as a supervisor over the prison fails as a matter
of law.

      B.  <u>No Deliberate Indifference</u>.

      To the extent that Plaintiff alleges that Defendant
Ferrell was personally involved in causing him to receive
untimely and inadequate medical treatment for his seizure
disorder, Plaintiff's claim still fails.  (Doc. 1 at 4-5).
In order to survive Defendant's Motion for Summary Judgment,
Plaintiff must establish both the objective and subjective
elements of his Eighth Amendment claim.

      For purposes of this motion, the Court assumes that
Plaintiff's seizure disorder constitutes an objectively
serious medical injury.  Therefore, the Court turns to the
second, subjective element of Plaintiff's claim, that is,
whether Defendant Ferrell was deliberately indifferent to

Plaintiff's serious medical need.

The record shows that, on August 4, 2008, and August 27, 2008, Plaintiff wrote letters to Warden Ferrell complaining that he had not seen a physician since his first seizure in July, 2008, and that he had not received an MRI related to the July seizure. (Doc. 10 at 14, 17). After receiving Plaintiff's letters, Warden Ferrell spoke with Plaintiff on or around September 2, 2008, and informed him that his MRI had been scheduled for September 8, 2008. (Id. at 7, 12). On September 11, 2008, Plaintiff received an MRI and an x-ray at a private hospital in Atmore, Alabama. (Id.).

On August 22, 2008, Plaintiff again wrote Warden Ferrell complaining that he had not been allowed to go to pill call the previous day to get his Dilantin medication. (Doc. 10 at 2, 19). The record shows, however, that Plaintiff was prescribed Dilantin beginning the very day that he complained to Warden Ferrell, August 22, 2008. (Doc. 22, att. 1 at 8).

On September 3, 2008, Plaintiff wrote a letter to Warden Ferrell complaining that he needed to see a doctor. Plaintiff repeated this complaint on September 15, 2008,

14

further complaining that the dosage of his Dilantin medication was too high and that he needed to see a real doctor, not a "non-doctor." (Doc. 10 at 12, 15). Approximately nine days later, on September 24, 2008, Dr. Lopez examined Plaintiff in the chronic care clinic, ordered lab work, and suspended the Dilantin. (Doc. 12, att. 1 at 4; Doc. 22, att. 1 at 8).

On January 2, 2009, Plaintiff again complained to Warden Ferrell that Dr. Lopez could not seem to get his medication right and that he wanted another MRI. (Doc. 10 at 13). Although it does not appear that Plaintiff was given another MRI, the record shows that, between January 2, 2009, and April 17, 2009, Dr. Lopez and the medical staff checked Plaintiff's Dilantin level and/or adjusted the dosage of Dilantin at least seven times. (Doc. 22, att. 1 at 2, 5-7).

As discussed above, in order to constitute "deliberate indifference," Defendant Ferrell must have known of and disregarded an excessive risk to Plaintiff's health. Farrow, 320 F.3d at 1245. There is no evidence to support such a finding in this action.

First, while it appears that Warden Ferrell was aware

15

of Plaintiff's frequent complaints concerning his medical
treatment at Fountain, there is no evidence that Warden
Ferrell disregarded any of those complaints.  As discussed
above, within one month after receiving Plaintiff's letter
of August 4, 2008, complaining of delay in receiving an MRI,
Warden Ferrell followed up with the medical staff and
verified that Plaintiff's MRI had been scheduled for
September 8, 2008.  (Doc. 10 at 7).  There is no evidence
that Warden Ferrell disregarded any excessive risk to
Plaintiff's health.

Moreover, Warden Ferrell is not a medical doctor and
does not personally handle medical emergencies or medical
treatment at the prison.  (Doc. 12 att. 2 at 2).  Medical
treatment is provided by the prison healthcare staff twenty-
four hours a day, seven days a week, based on established
medical protocols.  (Id. at 1-2).  In order to prevail on a
claim of medical indifference against Warden Ferrell,
Plaintiff must bring forth evidence "to make a showing that
[the Warden] was aware of facts which indicated that, at one
or more points in his diagnosis and course of treatment . .
., [Plaintiff] had a serious medical need that was not being
addressed, that [the Warden] perceived that some action by
him was necessary, that if he did not act [Plaintiff] would

16

be placed at serious risk of harm, and that having drawn that conclusion [the Warden] still failed to act." <u>Pitts v. Poveda</u>, 2009 WL 347411, *8 (S.D. Fla. 2009).  This Plaintiff has failed to do.[2]

Furthermore, there is no evidence that any of the alleged delay in this action, *i.e.*, the two-month delay in receiving an MRI and the alleged infrequent doctor visits (at three to four-month intervals), posed an excessive risk to Plaintiff's health or caused the "unnecessary and wanton infliction of pain."  <u>Hill</u>, 40 F.3d at 1187.  "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."  <u>Martin v. Barnes</u>, 2008 WL 250603, *5 (S.D. Ala. 2008) (citing <u>Hill</u>, 40 F.3d at 1189).  As discussed above, "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve

---

[2] Plaintiff's allegations of negligence directed to Warden Ferrell's alleged failure to ensure that Plaintiff received expedited or additional medical care (Doc. 14 at 3-4; Doc. 21 at 2-4) do not support an Eighth Amendment claim. <u>See</u> <u>Farrow</u>, 320 F.3d at 1245 (the law is clear that Eighth Amendment liability cannot be grounded on "mere negligence.").

life-threatening conditions or situations where it is
apparent that delay would detrimentally exacerbate the
medical problem." <u>Hill</u>, 40 F.3d at 1187.

The evidence is undisputed that Plaintiff's seizure
disorder is chronic.  Plaintiff has been followed regularly
by Dr. Lopez and the other prison physicians in the chronic
care clinic since his first seizure in July, 2008, and, at
the same time, has received immediate care from the nursing
staff in the health care unit each time that he has
experienced any medical problem.  Plaintiff has submitted no
"verifying medical evidence" that the two-month delay in
obtaining an MRI or the three months between doctor
examinations, during which he was treated by a nurse
practitioner and other nursing staff, worsened or
exacerbated his medical condition.  <u>Hill</u>, 40 F.3d at 1188
(emphasis added).

While the Court understands that any patient might
prefer to receive a diagnostic test, such as an MRI, sooner
than two months after a seizure or might wish to see a
physician for a chronic condition more frequently than every
three months, these facts, alone, do not establish a
constitutional violation.

18

> It is a reality of prison life
> that appointments with
> physicians or for diagnostic
> testing for treatment of
> non-life-threatening medical
> conditions must be scheduled.
> It is particularly complicated
> when an inmate is to be seen by
> an offsite physician.  In such
> instances, appointments must be
> made; transportation must be
> arranged; security must be
> provided to escort the inmate to
> the appointment and back; and
> priority must be given to
> inmates according to the nature
> of their medical problems.
> (Doc. 17, art. 11 at 4).  It is
> reasonable to expect some delay
> while arrangements are being
> made.  Patients in the free
> world often experience similar
> delays when seeking treatment of
> non-life-threatening injuries or
> ailments.

Martin, 2008 WL 250603 at *8.

     "When a prison inmate has received medical care, courts

hesitate to find an Eighth Amendment violation."  Martin,

2008 WL 250603 at *8 (citing Waldrop v. Evans, 871 F.2d

1030, 1035 (11th Cir. 1989)).  The fact that a Plaintiff may

disagree with the efficacy of the treatment recommended or

simply prefer a different course of treatment does not state

a valid claim of medical mistreatment under the Eighth

Amendment.  See, e.g., Adams v. Poag, 61 F.3d 1537, 1545

(11th Cir. 1995) ("the question of whether governmental

actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976)); <u>Trotter</u>, 2008 WL 2225696 at *9 ("It is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.") (citations omitted).

For each of the reasons discussed herein, Plaintiff has failed to meet the subjective requirements of his Eighth Amendment claim.  Therefore, Defendant Ferrell is entitled to summary judgment.

<u>V.   CONCLUSION</u>

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendant Jerry Ferrell (Docs. 11, 12) be granted, that Plaintiff's action be dismissed with prejudice, and that judgment be entered in favor of Defendant on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

20

1.   <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay

the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 19th day of May, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE